of age at the time of the accident, received an injury to his head, manifesting particularly in his right ear, and that he became wholly deaf in that ear within a few days of the accident, and that the hearing of his left ear shows an impairment of 30 or 40 per cent., and that the condition is progressive, and will probably result in total deafness. It was likewise shown by competent evidence that the plaintiff could and did hear ordinary conversation at all times prior to his injury, with no manifestation of impairment of his hearing. The defendant introduced some testimony tending to show that the plaintiff had chronic catarrhal impairment of the inner ear, such as is common in this climate, and that this condition might account to some extent for the deafness; but the jury were carefully instructed upon this point, and we think the evidence is sufficient to establish that the deafness in the right ear is directly due to the accident, and that the impairment of the hearing of the left ear is due to the same cause, aggravating the previous catarrhal condition. While a smaller verdict might have satisfied this court, the amount is not so far in excess of what reasonable men might properly conclude as to require this court to intervene.

Under the evidence as it stood at the close of the case, we are of the opinion that the court could not properly have charged the request of the defendant that the jury could not award any degree of damages for the impairment of the hearing of the left ear.

[2] We are also of the opinion that it was not error for the court to exclude the card record of the hospital where the plaintiff was treated. The testimony indicates that there was an error in the record; that it was made up by persons other than those who made the examination, and at most it could only have raised a shadow of a doubt as to whether the plaintiff was examined by the physician who was upon the stand, and who testified that he had made such examination. The defendant called the physician who was indicated by the card, and he refused to identify the plaintiff, or to dispute the plaintiff, who declared that he had never seen him before. We think the evidence was properly excluded.

The judgment and order appealed from should be affirmed, with costs. All concur.

(77 Misc. Rep. 90.)

### In re BAKER.

#### (Surrogate's Court, Kings County. May, 1912.)

1. USURY (§ 22*)—TRANSACTIONS INVALID—NATURE AND FORM OF TRANSACTIONS.

An assignment of a legacy of $2,000 was declared to be as collateral security for the note given by the assignor for $1,980. The note contained no obligation to pay interest; but the assignment described it as payable on demand, with interest at 6 per cent. and contained words of defeasance upon payment of the promissory note with accrued interest, and the assignee was given power to enforce payment of the legacy, and to retain therefrom a sufficient sum to pay the note, with interest thereon. At the same time a check for $2,000, drawn to the order of the as-

signor and indorsed to the assignee, was paid in cash, from which a "discount" of $300 was retained by the agent of the assignee and paid to the assignee. The legatee received in exchange for assignment, note, and check $1,275. *Held* that, the lender having received notice that 'his bank account was credited with the $300 two or three days after the charge of $2,000, the transaction was a usurious loan, and the legacy should be paid to the legatee.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 41; Dec. Dig. § 22.*]

2. USURY (§ 146*)—FORFEITURES—RESTITUTION.

To avoid a forfeiture for usury, under General Business Law (Consol. Laws 1909, c. 20) § 376, there must be an actual and unconditional surrender of the usurious premium, and one who proposes restitution only if the usurious interest shall be established is not entitled to release; and an offer by the assignee of a legacy, holding it as collateral security, without prejudice, to adjust the matter by payment of a sum reached by subtracting from the usurious premium the amount of interest unpaid on the loan does not avoid the forfeiture.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 437–439; Dec. Dig. § 146.*]

3. WILLS (§ 566*)—CONSTRUCTION—PROPERTY BEQUEATHED—"ALL MONEYS IN ANY BANKS."

Moneys deposited by the son of testatrix to his individual account are not included in a bequest of " 'all moneys in any banks' deposited in my name for my benefit," though a part of the sum so deposited had been collected by the son as agent of testatrix; and where the son, as executor, accounts for the amount of certain checks drawn on the account to the order of testatrix, which checks she held without presentation for payment, the assets represented by the checks should be distributed as part of the residue of her estate not specifically bequeathed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1238½, 1239; Dec. Dig. § 566.*]

Judicial settlement of the account of Charles J. Baker, as executor of the last will and testament of Louisa A. Guck, deceased. Decree entered.

John J. Lordan, of New York City, for objector.
James A. Gray, of Jamaica, for claimant.
Ronald K. Brown, of New York City, for executor.
S. M. & D. E. Meeker, of Brooklyn, for legatee Daniel J. Baker.
Warner W. Westervelt, of New York City, for legatee William H. Baker.
William E. Butler, of New York City, special guardian.

KETCHAM, S. [1] One of the legatees, having assigned his legacy, claims that the assignment was made to secure a loan to him from the assignee, and that the loan was usurious. The assignee insists that the assignment was absolute, and not by way of security, but that, if the assignment be found to have been incident to a loan, the transaction was free from usury. The finding will be that the transaction was a loan. This legatee executed and delivered an assignment to the loaner of his legacy of $2,000, with his promissory note for $1,980, and at the same time a check for $2,000, drawn to the order of the legatee in behalf of the assignee, was indorsed by the former and was paid in cash by the trust com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany on which it was drawn. This sum was then used to make certain payments, which will be specified. The note was made payable on demand, and contained no obligation to pay interest; but the assignment was declared to be made as collateral security for the promissory note, which, with other particulars, was described as payable on demand, with interest at 6 per cent. per annum. The assignment contained words of defeasance "upon payment of the said promissory note, with accrued interest," and it gave to the lender power to enforce the payment and to retain from its proceeds "a sufficient sum to pay the said promissory note, with the interest thereon." The legatee received in exchange for these papers $1,275. The transaction had been promoted by several persons, who must be regarded as his agents. From the $1,275 the legatee paid to two of these persons, respectively, $50 and $140. From the proceeds of the $2,000 check there were taken, without dissent by the legatee, $300, called by one of the witnesses "discount" for the lender, and retained by his agent, $20 retained by the assignee's agent to cover the transfer tax upon the legacy, $120 retained by the assignee's agent to indemnify his principal for any loss of interest on the legacy, if the same were not paid when due, $120 for one of the legatee's agents, $90 for another, and $75 for the person who acted in the assignee's behalf. The $300 was thereafter paid to the loaner under circumstances to be described.

Among these exactions, however revolting, the retention of $300 by the loaner's agent, with its subsequent payment to the loaner, is the only one which permits inquiry as to a possibly usurious character. The lender testifies that at first he only authorized his agent to purchase for him an inheritance; that his account in the trust company, of which the agent was the local manager, was thereafter charged with $2,000; that he knew nothing about the charge; that it was made subsequently to the transaction, or it may have been on the day of the transaction (evidently meaning his transaction with the assignor legatee). He then says that his bank account was credited with $300 two or three days after the charge (of $2,000), and that he received notice of the credit. He says that the $300 was credited to him "on account of this transaction"; that he inquired as to the nature of the credit, and "learned it was on this transaction." Again he testifies, as to the credit of $300, that it was "in this transaction." Throughout his testimony it is apparent that the witness, by the words "this transaction," meant the transaction between himself and the legatee, in which his money was paid to the legatee, and in which the legatee delivered his note and assignment. Although the lender testifies that he authorized only the purchase of an inheritance, the note and the assignment were received and retained by him. He received interest upon the note for the first six months of its life at the lawful rate, and at the time when he was advised of the credit to him of $300 on the transaction he well knew that the transaction had taken the form of a loan. He could not beguile himself with any fancy that the $300 was paid to him by any person other

than the borrower, or that it was paid by the borrower for anything except the loan. Upon the knowledge of human motives and conduct which men generally share, and which are uniformly recognized as among the means for estimating the actions and purposes of others, it must be found that the lender took the $300 from the borrower for the loan, and that it was to his knowledge in excess of lawful interest.

[2] At the opening of this inquiry counsel for the assignee made the following statement:

"The assignee, without prejudice, offers to pay to the assignor the sum of $233.25, by crediting that sum on a note for $1,980 and taking a decree for $1,746.75, or to pay the sum of $233.25 in cash and taking a decree for $1,980. This offer is made under section 376 of the General Business Law (Consol. Laws 1909, c. 20) to avoid forfeiture in the event the court finds the agreement between the assignee and the objector to be a usurious agreement."

The sum offered was apparently reached by subtracting from the usurious premium the amount of interest unpaid upon the loan. The statute which is invoked affords immunity from forfeiture only upon the repayment or return of the bonus exacted. It requires actual and unconditional surrender of the usurious premium. It affords no relief to one who proposes restitution only in the event that the usurious contract shall be upheld. The legacy should be paid to the legatee.

[3] The sums represented by checks made by the accounting executor to the decedent, $28,201.02, were not the subject of any specific gift, but fell within the gift of the residue. Whether judged by the general standards of our language, or by the distinctions and special meanings which appear in the will, the words "all moneys in any banks deposited in my name for my benefit" cannot comprehend moneys which were deposited by the son of the testatrix in an account maintained in his own name, without qualification. True, in this account were deposited moneys which the son collected as the agent of his mother. True, also, the son drew checks on this account to the order of his mother, amounting to $28,201.02, which she held during her lifetime without presentation for payment. While the checks indicate that in a disorderly sense a sum equal to the face of the checks was deposited in the son's account for the mother's benefit, none of the moneys in that account were deposited "for her benefit" in the accustomed meaning of the words, and in no aspect were they deposited "in her name." The gift in the phrase under examination was confined to moneys which might answer a double description. They were to be both in her name and for her benefit. The provision receives some light when read in contrast with the earlier legacy:

"To each of my children, respectively, any bank book which I have had made in his, her or their name, or which I may have in trust for either of them, and which shall be in existence at the time of my decease."

The son is the executor, and he accounts for the amounts of the checks. The assets thereby represented should be disposed of as a part of the residue.

Decreed accordingly.